# EXHIBIT 1

Case 8:22-cv-01091-DOC-KES   Document 1-1   Filed 06/01/22   Page 2 of 52   Page ID #:7
Electronically Filed by Superior Court of California, County of Orange, 04/29/2022 10:00:34 AM.
30-2022-01257143-CU-BC-WJC - ROA # 2 - DAVID H. YAMASAKI, Clerk of the Court By Katie Trent, Deputy Clerk.

Robert J. Odson (State Bar No. 162506)
Staci M. Tomita (State Bar No. 266309)
Benjamin L. Hicks (State Bar No. 312765)
**SHUMENER, ODSON & OH LLP**
550 South Hope Street, Suite 1050
Los Angeles, CA  90071-2678
Tel: 213.344.4200; Fax:  213.344.4190
Email: rodson@soollp.com

*Attorneys for Crown Valley Holdings, LLC*

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF ORANGE

| | |
|---|---|
| CROWN VALLEY HOLDINGS, LLC, a Delaware Limited Liability Company,<br><br>Plaintiffs,<br>v.<br><br>AMCO INSURANCE COMPANY, an Iowa Corporation; DOES 1 - 50, Inclusive,<br><br>Defendants. | CASE NO.   30-2022-01257143-CU-BC-WJC<br><br>**COMPLAINT**<br><br>Assigned for All Purposes<br><br>Judge Walter Schwarm |

-1-

COMPLAINT

Plaintiff Crown Valley Holdings, LLC ("**Crown Valley**" or "**Insured**") alleges as follows:

## INTRODUCTION

1.      This case arises from the breach by defendant AMCO Insurance Company ("**AMCO**") of its duty to defend its Insured in the consolidated lawsuit titled Stars and Bars, LLC v. Westport Capital Partners, LLC, et al., Case No. 30-2017-00926590-CU-BC-CJC (consolidated with Case No. 30-2017-00926598-CU-PO-CJC) (the "**Underlying Action**").

2.      The crux of this case is that – even after promising to defend and indemnify Insured – AMCO failed to live up to its obligations by putting the squeeze on and exerting control over the defense.  AMCO failed to fund the defense, and then – *on the eve of trial, after Insured demanded AMCO settle within policy limits* – AMCO pulled the rug out from under Insured by withdrawing the indemnity AMCO had promised, in an attempt to justify its refusal to settle the Underlying Action.  This caused Insured to incur millions of dollars in fees and costs to defend itself from a potential $10 million judgment in the Underlying Action.  Then, to cover its tracks, AMCO interfered with Insured's attorney-client and fiduciary relationships and ordered the defense counsel it retained to withhold Insured's client files – the very files that would show AMCO's breaches and wrongdoing.

3.      By way of background, in Case No. 30-2017-00926598-CU-PO-CJC (the "**Grease Line Case**"), AMCO unconditionally agreed to both defend and indemnify Insured, without reservation, pursuant to an insurance policy to which Insured is an additional insured, providing up to $5,000,000 in coverage, inclusive of excess coverage.  By letter dated May 30, 2018, AMCO's agent stated "[AMCO] has accepted the tender of defense of Crown Valley Holdings, LLC..." and appointed defense counsel to represent it.

4.      After the Grease Line Case was consolidated with Case No. 30-2017-00926590-CU-BC-CJC (the "**Fence Case**"), AMCO continued to defend Insured in the Underlying Action, in full, but issued a reservation of rights solely with respect to the Fence Case.  Nevertheless, AMCO unequivocally stated that it was still indemnifying Insured in the Grease Line Case,

1   without qualification, stating: "On or around January 12, 2018, AMCO accepted the tender for

2   claims asserted in the Negligence Action [*i.e.*, the Grease Line Case] ***without reservation***."

3        5.     Since Insured's coverage was approximately $5,000,000, and AMCO stated it was

4   indemnifying Insured "without reservation", Insured relied on the defense provided by AMCO for

5   the first three (3) years of the Underlying Action.  However, in mid-2020, Insured became aware

6   that the case was dragging on with virtually no progress, and that the plaintiff in the Underlying

7   Action, Stars and Bars, LLC ("**S&B**"), was naming actual and suspected passive investors in

8   Insured as new defendants to the uninsured claims in the Fence Case with no basis.

9        6.     The Underlying Action appeared to Insured to be getting out of hand.  It had

10  dragged out for more than three (3) years and little to no progress had been made – even in

11  conducting the most basic discovery.  Thus, Insured retained Shumener, Odson & Oh LLP

12  ("**SOO**") as its counsel in the Underlying Action to oversee the matter and represent the new

13  defendants as to the uninsured claims.

14       7.     To Insured's surprise, **not a single deposition in the Underlying Action had**

15  **been taken for nearly three (3) years of the lawsuit** – the first substantial deposition occurred

16  in late-February 2020.  The next deposition did not occur until six months later, August 2020,

17  after SOO was retained.  Indeed, AMCO's defense counsel did not even visit the site at issue in

18  the Underlying Action until late-2020 – three and one half (3 ½) years into the lawsuit.  The

19  failure to conduct discovery or even visit the site, and other delays in the defense of S&B's

20  claims, was due to the rigid limitations placed on the defense by AMCO.  Insured is informed and

21  believes that these limitations are a standard business practice of AMCO in its management of

22  litigation defense.  Thus, Insured was forced to retain SOO – at its own out-of-pocket expense –

23  to properly pursue and fund the defense.

24       8.     Then, in the days leading up to trial, AMCO had the opportunity to settle the

25  Underlying Action within policy limits – for less than $2 million.  But, before AMCO would

26  even entertain settlement, AMCO demanded Crown Valley contribute $1 million of its own

27  property – a $1 million judgment lien it possessed against S&B – despite AMCO's

28  representation, promise and obligation to defend and indemnify Insured.  Such demand

-3-

1  constituted bad faith and was for the sole benefit of AMCO and AMCO's other insureds.  Worse,

2  even after Insured *agreed* to contribute the $1 million judgment lien, AMCO agreed to offer only

3  $100,000 to the settlement – *ten (10) times less than the amount AMCO demanded Crown*

4  *Valley contribute.*  Thus, contrary to AMCO's representation, promise and obligation to defend

5  and indemnify Insured, AMCO schemed to shift the cost of both the litigation and any potential

6  settlement to Insured.

7         9.      Given that AMCO's own defense lawyers estimated that there was a 75% to 80%

8  chance that Insured would be found liable for some amount in the Underlying Action, AMCO's

9  offer was grossly unreasonable.  If Insured was found liable – as AMCO's own lawyers predicted

10  – this would lead to an award of attorneys' fees which was estimated to exceed $2 million, even

11  before trial.  In attempting to justify its bad faith settlement behavior, and at the eve of trial,

12  *AMCO suddenly stated it would not indemnify Insured for attorneys' fees awarded to S&B* –

13  thereby reneging on its commitment to indemnify Insured without reservation.

14        10.     This came as a shock to Insured, as a large amount of the exposure to Insured was

15  S&B's alleged attorneys' fees – and AMCO had never made any reservation with respect to

16  attorneys' fees and costs in the Grease Line Case up to this point.

17        11.     Thus, AMCO's bad faith reversal forced Insured to incur significant trial costs to

18  defend itself against all claims or face a seven-figure attorneys' fees award in the Grease Line

19  Case.  Even though Insured had been relying on the defense counsel retained by AMCO to

20  prepare for trial, after AMCO pulled the rug out from under Insured, Insured could not risk the

21  potential exposure that AMCO now would not cover.

22        12.     In doing this, SOO discovered that virtually *none* of the essential trial preparation

23  work had been conducted by the counsel retained by AMCO, due to the rigid financial constraints

24  imposed by AMCO.  As such, it was SOO – at Insured's personal cost – not AMCO's defense

25  counsel, that (i) prepared virtually all of the substantive Motions in Limine, (ii) reviewed the

26  130,000 pages of documents produced by S&B, (iii) prepared the more than 600 trial exhibits on

27  behalf of all defendants (including sifting through the 130,000 page production to find the key

28  documents), (iv) prepared and negotiated the jury instructions and verdict forms with S&B, and

(v) prepared virtually all of the key witness outlines for direct and cross examination, including all of the direct examination outlines for Insured's client-witnesses and even the majority of the cross-examination outline for the key opposing witness, Brian Roche.  AMCO was unjustly enriched by this work.

13.     Then, in the middle of jury selection – potentially due to the burden and stress caused by AMCO's unreasonable restraints – the lead trial counsel retained by AMCO suffered an apparent stress-related medical emergency that caused him to have to withdraw from the trial and take medical leave.

14.     After the withdrawal of that counsel, the Court inquired why Insured would need a trial continuance – because surely the counsel retained by AMCO had prepared witness outlines and an outline of the opening statement that another attorney could use to quickly step up.

15.     **Not a single witness outline or outline of the opening statement had been prepared by the counsel retained by AMCO up to the date of the medical emergency, due to the unreasonable constraints that AMCO put on defense counsel**.  This caused Insured to scramble and incur further substantial costs to have SOO prepare the materials that AMCO should have authorized its counsel to prepare *months* before that incident, as competent trial counsel would have done.

16.     Finally, confirming that AMCO utterly failed to fund the defense, Insured was forced to pay – out of its own pockets – essential litigation and trial costs, including the cost of necessary depositions/transcripts, daily trial transcripts, the cost of printing required Court copies of deposition and trial transcripts for use by the Court at trial, and paying fees associated with the court reporter at trial – all of which AMCO was required to pay as part of its duty to defend Insured and fund the litigation and which AMCO failed and refused to pay.

17.     Ultimately, due to Insured's mitigation and the substantial costs incurred by Insured, a judgment against Insured was averted.  Without the substantial costs incurred by Insured, a verdict in its favor would not have been realized.  Thus, AMCO was substantially and unjustly enriched by Insured.

COMPLAINT

18.     To cover its tracks, AMCO continued to interfere with Insured's rights even after a favorable verdict was rendered.  When Insured sought to obtain documents in its client files from the defense counsel retained by AMCO, AMCO interfered and caused the defense counsel not to turn over the client files, violating fiduciary duties owed to Insured.  Thus, AMCO not only controlled and constrained the defense, but interfered with Insured's fiduciary relationships.  As AMCO's conduct demonstrates, Insured was not defended by AMCO; the defense counsel retained by AMCO represented AMCO – not Insured.

19.     In sum, Insured was forced to expend no less than $3,176,237.25 in attorneys' fees and $115,000 in trial related costs – to defend itself from a $10,000,000 claim – all of which could have been avoided had AMCO fulfilled its obligation to defend Insured or otherwise settle the Underlying Action within policy limits.  Instead, AMCO breached its obligation to defend Insured, interfered with Insured's attorney-client relationships, and withdrew its indemnity in bad faith on the eve of trial.

## PARTIES

20.     Plaintiff Crown Valley Holdings, LLC ("**Crown Valley**" or "**Insured**") is, and at all times relevant herein was, a Delaware limited liability company, qualified to do business in California, and which conducts business in Orange County, California.

21.     On information and belief, defendant AMCO Insurance Company ("**AMCO**"), which is also referred to as Nationwide Insurance Company, is, and at all times relevant herein was, an Iowa corporation, qualified to do business in California, which conducts business in Orange County, California.  AMCO accepted the tender of defense and indemnity in the Underlying Action, which was pending in Orange County, California.  Thus, the acts or omissions relevant to this action took place in Orange County, California.

22.     Insured is unaware of the true names of defendants sued herein as Does 1 through 50, inclusive, and therefore sue said defendants by such fictitious names.  Insured will seek leave of court to amend this Complaint to allege the true names and capacities of said defendants when they have been ascertained.  Insured is informed and believes, and thereon alleges, that Does 1

-6-

COMPLAINT

1    through 50, inclusive, are in some manner responsible for some or all the wrongdoing alleged

2    herein.

3        23.    On information and belief, AMCO and Does 1 through 25 have such a unity of

4    interest that to treat them as separate entities would lead to an inequitable result and injustice.

5                            **THE UNDERLYING ACTION**

6        24.    The Underlying Action was filed on June 16, 2017. The Underlying Action

7    consisted of two separate cases – the Grease Line Case and the Fence Case. The Grease Line

8    Case involved an allegation that a certain grease line was negligently maintained by Insured (and

9    others), causing harm to S&B, the plaintiff in the Underlying Action. The Fence Case involved

10   allegations that Insured caused harm to S&B by erecting a fence around S&B's premises or

11   denying S&B access to a certain storage unit.

12       25.    On or about January 12, 2018, AMCO accepted the tender of defense with respect

13   to the Grease Line Case and retained a law firm called Cannon & Nelms, P.C. to represent

14   Insured, writing in a May 30, 2018 letter: "Nationwide [AMCO] has accepted the tender of

15   defense of Crown Valley Holdings, LLC … and is appointing Cannon & Nelms, P.C., as defense

16   counsel in this matter." AMCO did not reserve rights with respect to this defense or indemnity.

17       26.    Ultimately, the Grease Line Case and the Fence Case were consolidated.

18       27.    AMCO then sent Insured a letter on March 24, 2020, confirming that it would

19   continue to defend Insured in the Underlying Action and that it was indemnifying Insured for the

20   Grease Line Case – but, that it was reserving rights with respect to the Fence Case. Specifically,

21   AMCO wrote: "On or around January 12, 2018, AMCO accepted the tender for claims asserted in

22   the Negligence Action [*i.e.*, the Grease Line Case] *without reservation*."

23       28.    Cannon & Nelms, P.C. subsequently withdrew from representation due to a

24   conflict of interest.

25       29.    AMCO then hired Murchison & Cumming LLP ("**Murchison**") to represent

26   Insured in the Grease Line Case. In the Fence Case, another insurance company had retained the

27   services of Wood, Smith, Henning & Berman LLP ("**WSHB**") to represent Insured, and after the

28   consolidation, AMCO continued the retention of WSHB in the Fence Case.

30.     Thus, AMCO retained Murchison and WSHB to represent Insured in the Underlying Action.  Since Insured's insurance coverage, including excess insurance coverage, was approximately $5,000,000, and AMCO stated it was indemnifying Insured "without reservation", Insured relied on the defense provided by AMCO for the first three (3) years of the Underlying Action.

**INADEQUATE DEFENSE / BAD FAITH WITHDRAWAL OF INDEMNITY**

31.     Notwithstanding the indemnity provided by AMCO, in mid-2020, Insured became aware that (i) the case was dragging on with virtually no progress for more than three (3) years with no end in sight, (ii) S&B was suddenly widening the net by naming Insured's actual and suspected passive investors as new defendants to uninsured claims without basis, and (iii) AMCO had not settled the Underlying Action even though it had the opportunity to do so well within policy limits.  Thus, Insured retained SOO as its counsel in the Underlying Action to oversee the matter and represent the new defendants as to the uninsured claims.

32.     Confirming that AMCO had placed a stranglehold on the defense, not a single deposition in the Underlying Action had been taken for nearly three (3) years of the lawsuit – the first deposition occurred in late-February 2020.  The next deposition did not occur until six (6) months later, in August 2020, after SOO was retained.  In a case that had nearly sixty (60) witnesses on the trial witness list, the only explanation for the fact that virtually no depositions had occurred in three (3) years is that AMCO would not approve the expense.  Indeed, the defense counsel hired by AMCO did not even visit the site at issue in the Underlying Action until about December 2020 – three and one half (3 ½) years into the lawsuit.  Thus, Insured was justifiably concerned about the limitations placed on the defense by AMCO, in addition to the qualifications of counsel appointed to represent it.

33.     Worse, prior to the time SOO was retained, S&B obtained a copy of a privileged document.  Even though this privileged document was produced concurrently to WSHB and Murchison in April 2020, they took no steps to claw back the inadvertently disclosed privileged materials – apparently because they did not know it had been produced until S&B repeatedly used the document, calling it a "smoking gun".  Even after S&B used the "smoking gun", WSHB and

-8-

1    Murchison did virtually nothing to stop S&B from using it.  It was not until SOO was retained

2    that Insured was able to take actions to claw back the document and obtain sanctions against

3    S&B.  This failure further shows that AMCO did not authorize WSHB and Murchison to (i)

4    review documents produced to S&B, and/or (ii) prepare a motion to stop S&B from using a

5    privileged document, even where that document was allegedly a "smoking gun".

6        34.    On information and belief, AMCO imposed severe and rigid restraints on the

7    billing practices and conduct of necessary defense tasks by Murchison and WSHB in the

8    Underlying Action, thereby hindering the defense and preparation for trial.  Insured is informed

9    and believes that the limitations put on defense counsel activities are a standard business practice

10   of AMCO in its management of litigation defense.  Thus, Insured was forced to retain SOO – at

11   its own out-of-pocket expense – to properly pursue and fund the defense.

12       35.    Moreover, AMCO failed to adequately fund the defense.  This failure was

13   evidenced by, among other things, AMCO's refusal to pay for certain certified transcripts,

14   approve costs for trial support vendors, pay for printing required transcripts for use by the Court

15   at trial, pay for necessary depositions and transcripts, and even pay certain costs associated with

16   the Court reporter (an officer of the Court) at trial.  Insured was forced to pay many of these costs

17   – approximately $115,000 – out of pocket to avoid litigation, monetary damages, and damage to

18   its reputation with reputable vendors and the Court.

19       36.    Then, in the days leading up to trial, AMCO had the opportunity to settle the

20   Underlying Action within policy limits – for less than $2 million.  In order to even entertain

21   settlement, AMCO demanded Crown Valley contribute a $1 million judgment lien it possessed

22   against S&B – *i.e.*, to walk away from $1 million that Crown Valley would have recovered from

23   any judgment or settlement in the Underlying Action.  Such demand was bad faith and was for

24   the sole benefit of AMCO and AMCO's other insureds.  Worse, even after Crown Valley *agreed*

25   to contribute the $1 million judgment lien, AMCO agreed to offer only $100,000 to the settlement

26   – *ten (10) times less than the amount AMCO demanded Crown Valley contribute.*

27       37.    AMCO's position was patently unreasonable, given that WSHB (AMCO's own

28   lawyers) estimated that there was a 75% to 80% chance that Insured would be found liable for

-9-

1    some amount in the Underlying Action.  If Insured was found liable, as AMCO's own lawyers

2    predicted, this would lead to an award of attorneys' fees against Insured which was estimated to

3    exceed $2 million, even before trial.  Thus, in attempting to justify its bad faith settlement

4    behavior, ***AMCO suddenly stated that it would not indemnify Insured for any attorneys' fees***

5    ***awarded to S&B in the Grease Line Case*** – thereby reneging on its commitment to indemnify

6    Insured without reservation.

7         38.    This came as a shock to Insured, as a large amount of the exposure to Insured was

8    S&B's alleged attorneys' fees – and AMCO had never made any reservation with respect to

9    attorneys' fees and costs in the Grease Line Case up to this point.

10        39.    Thus, AMCO's bad faith reversal forced Insured to incur significant trial costs to

11   defend itself from a seven-figure judgment in the Underlying Action.  Even though Insured had

12   been relying on the defense counsel retained by AMCO to prepare for trial, after AMCO pulled

13   the rug out from under Insured, Insured had no choice but to mitigate its potential harm and take a

14   more active role at trial.

15        40.    To that end, in the lead up to trial, due to (i) the lack of competence of the counsel

16   retained by AMCO to handle the Underlying Action, (ii) the restraints on that counsel placed by

17   AMCO, and (iii) AMCO's lack of adequate funding for the litigation, little to none of the

18   necessary trial preparation work was conducted by the counsel retained by AMCO.

19        41.    As a result, it was SOO – at Insured's personal cost – that (i) prepared virtually all

20   of the substantive Motions in Limine, (ii) reviewed the 130,000 pages of documents produced by

21   S&B, (iii) prepared the more than 600 trial exhibits on behalf of all defendants (including sifting

22   through the 130,000 page production to find the key documents), (iv) prepared and negotiated the

23   jury instructions and verdict forms with S&B, and (v) prepared virtually all of the key witness

24   outlines for direct and cross examination, including all of the direct examination outlines for

25   client-witnesses and even the majority of the cross-examination outline for the key opposing

26   witness, Brian Roche, among other things.  There is no indication that any of this work would

27   have been timely or properly conducted by the counsel retained by AMCO – and, without this

28   work, a complete defense verdict could not have been realized.

42.     Indeed, in the middle of jury selection – potentially due to a lack of competence or stress caused by AMCO's unreasonable restraints on the defense – the lead trial counsel retained by AMCO suffered a stress-related medical emergency that caused him to have to withdraw from the trial and take medical leave. He only returned on the date the verdict was reached, after the matter had been submitted to the jury.

43.     After the withdrawal of that counsel, the Court inquired why Insured would need a trial continuance – because surely the counsel retained by AMCO had prepared witness outlines and an outline of the opening statement that another attorney could use to "pinch hit".

44.     In response to the Court's question, Murchison's second chair at the trial (and Murchison's lawyer who attended virtually all depositions in the Underlying Action) argued for a continuance, admitting that he could not step up and was not competent to handle this sort of trial – stating that he had only attended two trials in his long career, once in his first year where he "basically carried the suitcase of the partner" and another *ten (10) years prior* to the Underlying Action. The counsel provided by AMCO were simply not competent to handle a 27-court day jury trial, nor a complex commercial dispute involving complicated issues of contract interpretation, waiver, and *res judicata*, as here. Despite the fact that it was AMCO's defense lawyers who argued for the continuance, and despite the fact that it was AMCO's severe restraints on the defense that necessitated a continuance, AMCO later attempted to blame SOO for the requested trial continuance – without basis.

45.     <u>Contrary to the Court's assumptions regarding trial preparation, apparently due to the restraints on the defense imposed by AMCO, neither Murchison nor WSHB had prepared a single witness outline or outline of the opening statement up to the date of the medical emergency that would allow someone to step up and "pinch hit" as indicated by the Court</u>. This caused Insured to scramble and incur further substantial costs to have SOO prepare the materials that AMCO should have authorized its counsel to prepare *months* before that incident, as competent trial counsel would have done.

-11-
COMPLAINT

46.     On information and belief, AMCO restrained Murchison and WSHB from preparing these materials in a timely manner, which resulted in a costly scramble on the eve of trial that was borne by Insured – not AMCO – and put Insured at substantial risk.

47.     In sum, AMCO breached its duties and obligations to Insured by (i) failing to employ counsel competent to handle the Underlying Action, (ii) failing to provide that counsel with adequate funds to conduct the defense, (iii) imposing unreasonable restrictions on defense counsel's actions in defending Insured, (iv) failing to keep abreast of the status so that it could reasonably and in good faith act on settlement proposals, (v) failing to make a reasonable settlement offer, (vi) repudiating its agreement and representation that it would defend and indemnify Insured, and/or (vii) interfering with Insured's attorney-client relationships – all of which caused Insured to incur substantial costs to protect itself and mitigate the potential exposure it faced.  Such conduct was unlawful, unfair, and/or fraudulent, such that the unjust enrichment AMCO received due to Insured's mitigation should be disgorged to Insured.

## AMCO INTERFERES WITH INSURED'S ATTORNEY-CLIENT RELATIONSHIPS

48.     Following the trial, in light of Insured's concerns regarding the defense provided by AMCO/Murchison/WSHB, Insured sought access to its client files from Murchison and WSHB, including the following categories of documents regarding the work that Murchison and WSHB purportedly performed on Insured's behalf:

(a)     All communications with insurance companies/adjusters/counsel regarding the Underlying Action;

(b)     All notices exchanged with any insurance company regarding the Underlying Action;

(c)     All invoices/receipts/requests for payment submitted to any insurance company regarding Underlying Action;

(d)     All timesheets (paper or electronic) for work performed for the Underlying Action;

(e)     Any payments received in response to invoices/receipts/requests for payment submitted to any insurance company regarding the Underlying Action;

(f)     Any rejections of invoices/receipts/requests for payment by any insurance company for the Underlying Action;

(g)     Any billing policies/practices/instructions/ procedures provided by any insurance company applicable to the Underlying Action.

-12-

49.     After ignoring Insured's requests for several days, WSHB and Murchison stated that they would not be responding to their own client – Insured – but that AMCO (and its coverage counsel) would be responding on their behalf.

50.     Then, AMCO's coverage counsel – rather than Insured's own attorneys – sent Insured an e-mail stating that Insured's request for its own client files and communications was improper and refused to allow Insured access to its own client files.

51.     Thus, AMCO aided and abetted WSHB and Murchison's breach of fiduciary duty to Insured and/or otherwise interfered with Insured's fiduciary relationships, depriving Insured of access to its client files – including the very documents which would show AMCO's breaches of duty to Insured.

52.     AMCO's conduct caused Insured direct harm to Insured, including – among other things – attorneys' fees and costs incurred to attempt to obtain access to Insured's client files, among other things.

53.     In the end, Insured has incurred no less than $3,176,237.25 in attorneys' fees and $115,000 in costs that would have been avoided had AMCO not breached its duty to Insured. Insured continues to incur damages related to AMCO's breaches and AMCO's aiding and abetting of third-party breaches.

## FIRST CAUSE OF ACTION

## BREACH OF DUTY

(Against All Defendants)

54.     Insured re-alleges paragraphs 1 through 53, inclusive, and by this reference incorporates the same as though fully set forth herein.

55.     AMCO agreed to defend Insured in the Underlying Action and agreed to indemnify Insured with respect to certain claims in the Underlying Action.

56.     AMCO had a duty to defend Insured, which includes, among other things, a duty to retain counsel competent to handle the Underlying Action and adequately fund the defense. The duty to adequately fund the litigation is particularly heightened where certain claims are fully

-13-

1   indemnified and others are not – as here – because AMCO's failure to fund the litigation further

2   prejudiced and put Insured at risk with respect to claims that were not indemnified.

3        57.    AMCO breached its duty to defend, as detailed herein.  AMCO also breached its

4   duties to Insured in that it conspired to breach and/or aided and abetted a breach of fiduciary duty

5   to Insured by denying Insured access to documents from its client files.  AMCO conspired with

6   the defense counsel it retained on Insured's behalf – Murchison and WSHB – to deprive Insured

7   of access to its own documents.

8        58.    AMCO also breached its duty to indemnify and acted in bad faith by (a) first

9   asserting that it accepted the claims in the Grease Line Case, only to later contend that it would

10   not indemnify Insured for any attorneys' fees and costs awarded to S&B, and (b), notwithstanding

11   Insured's demand, failing to make a reasonable settlement offer to settle the Underlying Action.

12        59.    As a direct and proximate cause of AMCO's breaches, Insured sustained actual

13   damages, as described herein, the precise amount of which will be established according to proof

14   at trial.

15        60.    AMCO acted in bad faith, with reckless disregard for Insured's rights, and with

16   oppression, fraud and malice toward Insured, entitling Insured to an award of punitive or

17   exemplary damages.

18                       **SECOND CAUSE OF ACTION**

19        **UNFAIR COMPETITION & BUSINESS PRACTICES**

20                      (Against All Defendants)

21        61.    Insured re-alleges paragraphs 1 through 60, inclusive, and by this reference

22   incorporates the same as though fully set forth herein.

23        62.    AMCO's conduct was unlawful, unfair, and/or fraudulent, in that, among other

24   things, Insured is informed and believes that AMCO has a policy and practice of (i) retaining

25   counsel not competent to handle the defense of complex civil litigation; (ii) failing to fund basic

26   litigation defense costs; (iii) misleading its insureds as to the scope of indemnity it is providing,

27   even after it confirms in writing that it is indemnifying without reservation or qualification; and

28

-14-

1    (iv) notwithstanding Insured's demand, failing to make a reasonable settlement offer, well within

2    policy limits, to settle the Underlying Action.

3        63.    Moreover, Insured is informed and believes, and on that basis alleges, that AMCO

4    is interfering with Insured's right to receive its client-files from Murchison and WSHB –

5    apparently because it believes those files will confirm that AMCO breached its duty to defend

6    Insured.  AMCO's interference with Insured's rights and fiduciary relationships is an unlawful

7    and unfair practice that violates the California Rules of Professional Conduct, among other things.

8        64.    By engaging in the conduct described herein, AMCO violated, and continues to

9    violate, Cal. Bus. and Prof. Code §§ 17200, et seq.

10       65.    AMCO's conduct herein did deceive or mislead Insured and/or is likely to deceive

11   members of the public at large.

12       66.    As a result of AMCO's unlawful, unfair, and/or fraudulent practices, Insured

13   suffered actual damages to mitigate the harm caused by AMCO.  Unless AMCO is enjoined from

14   this conduct, members of the public and Insured may continue to be harmed by AMCO.  Further,

15   AMCO was unjustly enriched by Insured's conduct in that, among other things, it allowed its own

16   retained defense attorneys – e.g., Murchison and WSHB – to take a back-seat at trial with the

17   knowledge that Insured would mitigate its harm, to AMCO's direct benefit.  AMCO's unjust

18   enrichment should be disgorged and paid to Insured.

19       67.    Insured is informed and believes, and on that basis alleges, that such conduct is

20   ongoing.

21       68.    AMCO acted in bad faith, with reckless disregard for Insured's rights, and with

22   oppression, fraud and malice toward Insured, entitling Insured to an award of punitive or

23   exemplary damages.

24               **THIRD CAUSE OF ACTION**

25               **BREACH OF CONTRACT**

26               (Against All Defendants)

27       69.    Insured re-alleges paragraphs 1 through 68, inclusive, and by this reference

28   incorporates the same as though fully set forth herein.

70.     As an additional insured, Insured was an intended beneficiary of the insurance contract with AMCO for which the Underlying Action was covered.  Under the insurance contract, AMCO had obligations to, among other things, defend Insured, provide funding for the litigation, mitigate Insured's exposure by making a reasonable settlement offer, and cover necessary litigation and trial expenses.

71.     AMCO breached its obligations under the contract.

72.     Insured performed all its obligations under the contract or was otherwise excused from performance.

73.     AMCO's breach was a substantial factor in causing harm to Insured, including, among other things, Insured's incurrence of attorneys' fees and costs for the defense of the Underlying Action, which should have been paid by AMCO.

74.     AMCO was substantially and unjustly enriched by the conduct of Insured, which incurred substantial costs to mitigate AMCO's breach of its obligations under the insurance contract, such that all unjust enrichment should be disgorged and paid to Insured.

## FOURTH CAUSE OF ACTION

## AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

(Against All Defendants)

75.     Insured re-alleges paragraph 1 through 74, inclusive, and by this reference incorporates the same as though fully set forth herein.

76.     Murchison and WSHB owe fiduciary duties to Insured as its lawyers in the Underlying Action.  Murchison and WSHB breached that duty (and the California Rules of Professional Conduct) by failing to allow Insured access to its own client files.

77.     AMCO had actual knowledge of Murchison and WSHB's fiduciary duties to Insured.

78.     AMCO provided substantial assistance, encouragement and/or direction to Murchison and WSHB in the denial of Insured's requests for its client files, thereby breaching fiduciary duties to Insured.

79.     AMCO's conduct was a substantial factor in causing harm to Insured – including, among other things, Insured's incurrence of attorneys' fees and costs, the amount of which will be established according to proof at trial.

80.     AMCO acted in bad faith, with reckless disregard for Insured's rights, and with oppression, fraud and malice toward Insured, entitling Insured to an award of punitive or exemplary damages.

## PRAYER FOR RELIEF

WHEREFORE, Insured prays for judgment on the Complaint as follows:

1.  For damages in an amount to be proven at trial;

2.  For punitive/exemplary damages in an amount to be proven at trial;

3.  For costs of suit herein;

4.  For injunctive relief;

5.  For such other relief as the Court may deem just and proper.


Dated: April 29, 2022                    SHUMENER, ODSON & OH LLP


                              By _____
                                 ROBERT J. ODSON
                                 STACI M. TOMITA
                                 BENJAMIN LEVENTHAL HICKS
                                 *Attorneys for Crown Valley Holdings, LLC*

-17-

COMPLAINT

# EXHIBIT 2

Electronically Filed by Superior Court of California, County of Orange, 04/29/2022 01:26:00 PM.
30-2022-01257143-CU-BC-WJC - ROA # 8 - DAVID H. YAMASAKI, Clerk of the Court By Brenda Sanchez, Deputy Clerk.

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| | FOR COURT USE ONLY<br>*(SOLO PARA USO DE LA CORTE)* |
|---|---|

**NOTICE TO DEFENDANT:** AMCO INSURANCE COMPANY, an Iowa
*(AVISO AL DEMANDADO):* Corporation; DOES 1 - 50, Inclusive

**YOU ARE BEING SUED BY PLAINTIFF:** CROWN VALLEY HOLDINGS, LLC
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):* , a Delaware Limited Liability
Company

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* | Orange County Superior Court<br>West Justice Center<br>8141 13th Street<br>Westminster, CA 92683 | CASE NUMBER:<br>*(Número del Caso):*<br>30-2022-01257143-CU-BC-WJC<br>Judge Walter Schwarm |
|---|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: Robert J. Odson
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Shumener, Odson & Oh LLP
550 South Hope Street, Suite 1050, Los Angeles, CA 90071                          213-344-4200

| DATE:<br>*(Fecha)* 04/29/2022 | DAVID H. YAMASAKI, Clerk, by<br>Clerk of the Court | *(Secretario)*  Brenda Sanchez | , Deputy<br>*(Adjunto)* |
|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

| [SEAL] | **NOTICE TO THE PERSON SERVED:** You are served |
|---|---|

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

AMCO INSURANCE COMPANY, an Iowa Corporation;

3. ☒ on behalf of *(specify):*

under: ☒ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)          ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)          ☐ CCP 416.90 (authorized person)
☐ other *(specify):*

4. ☒ by personal delivery on *(date):*

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov<br>Westlaw Doc & Form Builder® |
|---|---|---|



**Notice of Service of Process**

**TV / ALL**
**Transmittal Number: 24859258**
**Date Processed: 05/03/2022**

| | |
|---|---|
| **Primary Contact:** | SOP Team nwsop@nationwide.com<br>Nationwide Mutual Insurance Company<br>Three Nationwide Plaza<br>Columbus, OH 43215-2410 |
| **Electronic copy provided to:** | Ashley Roberts |

| | |
|---|---|
| **Entity:** | AMCO Insurance Company<br>Entity ID Number  0115190 |
| **Entity Served:** | AMCO Insurance Company |
| **Title of Action:** | Crown Valley Holdings, LLC vs. Amco Insurance Company and Does 1-50 Inclusive |
| **Matter Name/ID:** | Crown Valley Holdings, LLC vs. Amco Insurance Company and Does 1-50 Inclusive (12251100) |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Contract |
| **Court/Agency:** | Orange County Superior Court, CA |
| **Case/Reference No:** | 30-2022-01257143-CU-BC-WJC |
| **Jurisdiction Served:** | California |
| **Date Served on CSC:** | 05/02/2022 |
| **Answer or Appearance Due:** | 30 days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Shumer, Odson & Oh LLP<br>n/a |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

# EXHIBIT 3

**Secretary of State
Statement of Information**
(Limited Liability Company)

**LLC-12**

20-C51642

# FILED

In the office of the Secretary of State
of the State of California

JUN 24, 2020

**This Space For Office Use Only**

**IMPORTANT — Read instructions before completing this form.**

**Filing Fee – $20.00**

**Copy Fees** – First page $1.00; each attachment page $0.50;
Certification Fee - $5.00 plus copy fees

| 1. Limited Liability Company Name (Enter the exact name of the LLC. If you registered in California using an alternate name, see instructions.) |
|---|
| CROWN VALLEY HOLDINGS, LLC |

| 2. 12-Digit Secretary of State File Number | 3. State, Foreign Country or Place of Organization (only if formed outside of California) |
|---|---|
| 201017310309 | DELAWARE |

**4. Business Addresses**

| a. Street Address of Principal Office - Do not list a P.O. Box | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| 300 Atlantic Street , Suite 1110 | Stamford | CT | 06901 |
| b. Mailing Address of LLC, **if different than item 4a** | City (no abbreviations) | State | Zip Code |
| 300 Atlantic Street , Suite 1110 | Stamford | CT | 06901 |
| c. Street Address of **California** Office, if Item 4a is not in California - Do not list a P.O. Box | City (no abbreviations) | State | Zip Code |
|  |  | CA |  |

**5. Manager(s) or Member(s)**

If no **managers** have been appointed or elected, provide the name and address of each **member**. At least one name **and** address must be listed. If the manager/member is an individual, complete Items 5a and 5c (leave Item 5b blank). If the manager/member is an entity, complete Items 5b and 5c (leave Item 5a blank). Note: The LLC cannot serve as its own manager or member. If the LLC has additional managers/members, enter the name(s) and addresses on Form LLC-12A (see instructions).

| a. First Name, if an individual - Do not complete Item 5b | Middle Name | Last Name | Suffix |
|---|---|---|---|
|  |  |  |  |

| b. Entity Name - Do not complete Item 5a |
|---|
| WCP REAL ESTATE FUND(II), L.P. |

| c. Address | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| 300 Atlantic Street , Suite 1110 | Stamford | CT | 06901 |

**6. Service of Process** (Must provide either Individual OR Corporation.)

**INDIVIDUAL** – Complete Items 6a and 6b only. Must include agent's full name and California street address.

| a. California Agent's First Name (if agent is **not** a corporation) | Middle Name | Last Name | Suffix |
|---|---|---|---|
|  |  |  |  |

| b. Street Address (if agent is **not** a corporation) - **Do not enter a P.O. Box** | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
|  |  | CA |  |

**CORPORATION** – Complete Item 6c only. Only include the name of the registered agent corporation.

| c. California Registered Corporate Agent's Name (if agent is a corporation) – Do not complete Item 6a or 6b |
|---|
| COGENCY GLOBAL INC. (C2003899) |

**7. Type of Business**

| a. Describe the type of business or services of the Limited Liability Company |
|---|
| Ownership of real estate |

**8. Chief Executive Officer, if elected or appointed**

| a. First Name | Middle Name | Last Name | Suffix |
|---|---|---|---|
|  |  |  |  |
| b. Address | City (no abbreviations) | State | Zip Code |
|  |  |  |  |

**9. The Information contained herein, including any attachments, is true and correct.**

| 06/24/2020 | Marc  Porosoff |  | Authorized Signer |  |
|---|---|---|---|---|
| Date | Type or Print Name of Person Completing the Form | | Title | Signature |

**Return Address (Optional)** (For communication from the Secretary of State related to this document, or if purchasing a copy of the filed document enter the name of a person or company and the mailing address. This information will become public when filed. SEE INSTRUCTIONS BEFORE COMPLETING.)

Name:

Company:

Address:

City/State/Zip:

# EXHIBIT 4



Company Profile
Company Search
Company Search
Results
Company
Information Old
Company Names
Agent for Service
Reference
Information NAIC
Group List Lines of
Business
Workers'
Compensation
Complaint and
Request for
Action/Appeals
Contact Information
Financial Statements
PDF's Annual
Statements Quarterly
Statements
Company Complaint
Company
Performance &
Comparison Data
Company
Enforcement Action
Composite
Complaints Studies
Additional Info Find
A Company
Representative In
Your Area View
Financial Disclaimer

Company Profile
Company Information

AMCO INSURANCE COMPANY
1 NATIONWIDE BLVD, FRAP SOLUTIONS
COLUMBUS,  OH 43215
800-282-9445

Old Company Names                                     Effective Date

Agent For Service

Melissa DeKoven
2710 Gateway Oaks Drive, Suite 150N
Sacramento   CA  95833-3505

Reference Information

| NAIC #: | 19100 |
|---|---|
| California Company ID #: | 2192-3 |
| Date Authorized in California: | 07/03/1975 |
| License Status: | UNLIMITED-NORMAL |
| Company Type: | Property & Casualty |
| State of Domicile: | IOWA |

back to top

NAIC Group List

NAIC Group #:              0140     NATIONWIDE CORP GRP

Lines Of Business

The company is authorized to transact business within these lines of insurance.
For an explanation of any of these terms, please refer to the glossary.

AIRCRAFT

AUTOMOBILE

BOILER AND MACHINERY

BURGLARY

COMMON CARRIER LIABILITY

CREDIT

DISABILITY

FIRE

LIABILITY

MARINE

MISCELLANEOUS

PLATE GLASS

SPRINKLER

SURETY

TEAM AND VEHICLE

WORKERS' COMPENSATION

back to top

© 2008 California Department of Insurance

# EXHIBIT 5

CM-010

Electronically Filed by Superior Court of California, County of Orange, 04/29/2022 10:00:34 AM.
30-2022-01257143-CU-BC-WJC - ROA # 3 - DAVID H. YAMASAKI, Clerk of the Court By Katie Trent, Deputy Clerk.

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
Robert F. Odson
SBN: 162308; 266309
Shumener, Odson & Oh LLP
550 South Hope Street, Suite 1050, Los Angeles, CA 90071
TELEPHONE NO.: 213-344-4200    FAX NO. (Optional): 213-244-4190
E-MAIL ADDRESS: rodson@soollp.com
ATTORNEY FOR (Name): Crown Valley Holdings, LLC

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE
STREET ADDRESS: Orange County Superior Court
MAILING ADDRESS: West Justice Center
CITY AND ZIP CODE: 8141 13th Street
BRANCH NAME: Westminster, CA 92683

CASE NAME: Crown Valley Holdings, LLC v. AMCO Insurance Company

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: 30-2022-01257143-CU-BC-WJC |
|---|---|---|
| [X] Unlimited (Amount demanded exceeds $25,000)   [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: Judge Walter Schwarm<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [X] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition *(not specified above)* (43)

2. This case [ ] is   [X] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [X] monetary  b. [X] nonmonetary; declaratory or injunctive relief  c. [ ] punitive
4. Number of causes of action *(specify):* Four (4)
5. This case [ ] is   [X] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: April 29, 2022

Benjamin Leventhal Hicks
_____    ►    _____
(TYPE OR PRINT NAME)          (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. September 1, 2021] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>*www.courts.ca.gov* |
|---|---|---|

**INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET**                    CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1.  This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet.  In item 1, you must check **one** box for the case type that best describes the case.  If the case fits both a general and a more specific type of case listed in item 1, check the more specific one.  If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below.  A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit.  A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment.  The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading.  A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE<br>STREET ADDRESS: 8141 13th STREET<br>MAILING ADDRESS: 8141 13th Street<br>CITY AND ZIP CODE: Westminster 92683<br>BRANCH NAME: West Justice Center | *FOR COURT USE ONLY*<br>**FILED**<br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF ORANGE |
|---|---|
| PLAINTIFF: Crown Valley Holdings, LLC | **Apr 29, 2022** |
| DEFENDANT: AMCO Insurance Company | Clerk of the Court<br>By: Katie Trent, Deputy |
| Short Title: CROWN VALLEY HOLDINGS, LLC VS. AMCO INSURANCE COMPANY | |
| **NOTICE OF HEARING**<br>**CASE MANAGEMENT CONFERENCE** | CASE NUMBER:<br>30-2022-01257143-CU-BC-CJC |

Please take notice that a(n), <u>Case Management Conference</u> has been scheduled for hearing on <u>09/30/2022</u> at <u>09:00:00 AM</u> in Department <u>W08</u> of this court, located at <u>West Justice Center</u>.

**Plaintiff(s)/Petitioner(s) to provide notice to all defendant(s)/respondent(s). Parties who file pleadings that add new parties to the proceeding must provide notice of the Case Management Conference to the newly added parties.**

<u>**IMPORTANT:**</u> Prior to your hearing date, please check the Court's website for the most current instructions regarding how to appear for your hearing and access services that are available to answer your questions.
Civil Matters - https://www.occourts.org/media-relations/civil.html
Probate/Mental Health - https://www.occourts.org/media-relations/probate-mental-health.html
Appellate Division - https://www.occourts.org/media-relations/appeals-records.html

<u>**IMPORTANTE:**</u> Antes de la fecha de su audiencia, visite el sitio web de la Corte para saber cuáles son las instrucciones más actuales para participar en la audiencia y tener acceso a los servicios disponibles para responder a sus preguntas.
Casos Civiles - https://www.occourts.org/media-relations/civil.html
Casos de Probate y Salud Mental - https://www.occourts.org/media-relations/probate-mental-health.html
División de apelaciones - https://www.occourts.org/media-relations/appeals-records.html

<u>**QUAN TRỌNG:**</u> Trước ngày phiên tòa của quý vị, vui lòng kiểm tra trang mạng của tòa án để biết những hướng dẫn mới nhất về cách ra hầu phiên tòa của quý vị và tiếp cận những dịch vụ hiện có để giải đáp những thắc mắc của quý vị.
Vấn Đề Dân Sự - https://www.occourts.org/media-relations/civil.html
Thủ Tục Di Chúc/Sức Khỏe Tinh Thần - https://www.occourts.org/media-relations/probate-mental-health.html
Ban phúc thẩm - https://www.occourts.org/media-relations/appeals-records.html

Clerk of the Court, By: *Katie Trent* , Deputy

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE**

West Justice Center
8141 13th STREET
Westminster 92683

**SHORT TITLE:** CROWN VALLEY HOLDINGS, LLC VS. AMCO INSURANCE COMPANY

| CLERK'S CERTIFICATE OF SERVICE BY MAIL | CASE NUMBER:<br>30-2022-01257143-CU-BC-CJC |
| --- | --- |

I certify that I am not a party to this cause. I certify that a true copy of the above <u>Notice of Hearing</u> has been placed for collection and mailing so as to cause it to be mailed in a sealed envelope with postage fully prepaid pursuant to standard court practices and addressed as indicated below. The certification occurred at <u>Westminster, California</u>, on <u>04/29/2022</u>. Following standard court practice the mailing will occur at <u>Sacramento, California</u> on <u>05/02/2022</u>.

Clerk of the Court, by: _Katie Trent_____ , Deputy

SHUMENER, ODSON & OH LLP
550 S HOPE STREET # 1050
LOS ANGELES, CA 90071-2678

---

**CLERK'S CERTIFICATE OF SERVICE BY MAIL**

V3 1013a (June 2004)                                                          Code of Civil Procedure , § CCP1013(a)

## Superior Court of California, County of Orange

## Judicial Arbitration Program Guidelines

**1.   Authority.**

These guidelines are subject to the California Rules of Court, Title 3, Division 8, Chapter 2, and Rule 360, Orange County Superior Court Rules.

**2.   Cases Subject to Judicial Arbitration.**

The following cases must be referred to judicial arbitration:

(a)  Any unlimited civil case where, in the opinion of the Court, the amount in controversy will not exceed fifty thousand dollars ($50,000) for each plaintiff, shall be referred to arbitration except:

- Cases that include a prayer for equitable relief that is not frivolous or insubstantial;
- Class actions;
- Small claims cases or trials de novo on appeal from the small claims court;
- Unlawful detainer proceedings;
- Family Law Act proceedings except as provided in Family Code section 2554;
- Cases where the court determines that arbitration would not reduce the probable time and expense necessary to resolve the litigation; and
- Cases involving multiple causes of action or a cross-complaint if the court determines that the amount in controversy as to any given cause of action or cross-complaint exceeds fifty thousand dollars ($50,000).

(b)  Upon stipulation, any limited or unlimited civil case, regardless of the amount in controversy.

(c)  Any at issue limited civil case may be referred to judicial arbitration if the court determines arbitration to be in the best interests of justice.

**3.   Selection of Arbitrator.**

(a)  The parties may stipulate to an arbitrator within ten (10) days after the case is referred to arbitration, by submitting a written stipulation for the arbitrator of their choice to the Civil Clerk's office. If the parties select a person who is not on the court's arbitration panel, the person selected must complete a written consent to serve and the oath required for panel arbitrators, and both the consent and the oath must be attached to the stipulation.

(b)  If the arbitrator has not been selected by stipulation, the arbitrator will be selected as follows:

(1)  Within 15 days after the case has been referred to arbitration, the ADR Administrator must determine the number of clearly adverse sides in the case; in the absence of a cross-complaint bringing in a new party, the analyst may assume there are two sides.  A dispute as to the number or identity of sides must be decided by the presiding judge in the same manner as disputes in determining sides entitled to peremptory challenges of jurors.

(2)  The ADR Administrator will select at random a number of names equal to the number of sides, plus one, and mail the list of randomly selected names to counsel for the parties.

(3)  Each side has 10 days from the date of mailing to file a rejection, in writing, or no more than one name on the list; if there are two or more parties to a side, they must join in the rejection of a single name.

(4)  On the expiration of the 10-day period, the ADR Administrator will appoint, at random, one or the persons on the list whose name was not rejected, if more than one name remains.

(5)  The ADR Administrator will assign the case to the arbitrator appointed.

(c)  If the first arbitrator declines to serve, the ADR Administrator must vacate the appointment of the arbitrator and may either:

(1)  Return the case to the top of the arbitration hearing list and appoint a new arbitrator; or

(2)  Certify the case to the court.

(d)  If the second arbitrator declines to serve or if the arbitrator does not complete the hearing within 90 days of the assignment, including any time due to continuances, the ADR Administrator must certify the case to the court.

(e)  If a case is certified to court under either (c) or (d), the court will hold a case management conference.  If the inability to hold an arbitration hearing is due to the neglect of lack of cooperation of a party who elected or stipulated to the arbitration, the court may set the case for trial and may make any other appropriate orders.  In all other circumstances, the court may reassign the case to arbitration or make any other appropriate orders to expedite disposition of the case.

## 4.  Conflict of Interest.

(a)Within ten (10) days of receiving the assignment, the arbitrator must determine whether any cause exists for his or her disqualification in the case upon any of the following grounds:[1]

(1)  The arbitrator has personal knowledge of disputed evidentiary facts concerning the case.  An arbitrator shall be deemed to have personal knowledge within the meaning of this paragraph if the arbitrator, or his or her spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person is to the arbitrator's knowledge likely to be a material witness in the case.

(2)  The arbitrator has served as a lawyer in the case, or in any other proceeding involving the same issues she or he served as a lawyer for any party in the present proceeding or gave advice to any party in the present case upon any matter involved in the case.  An arbitrator shall be deemed to have served as a lawyer in the case if within the past two years:

- A party in the case or an officer, director, or trustee was a client of the arbitrator or a client of a lawyer with whom the arbitrator is or was associated in the practice of law.
- A lawyer in the case was associated in the practice of law with the arbitrator.

An arbitrator who served as a lawyer for or officer of a public agency shall be deemed to have served as a lawyer in the case if he or she personally advised or in any way represented the public agency concerning the factual or legal issues in the case.

---

[1] Code of Civil Procedure Section 170.1.

(3)  The arbitrator has a financial interest in the subject matter of the case or in a party to the case.  An arbitrator shall be deemed to have a financial interest within the meaning of this paragraph if:

- A spouse or minor child living in the household has a financial interest.
- The arbitrator or the spouse of the arbitrator is a fiduciary who has a financial interest.

(4)  The arbitrator, the arbitrator's spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person, is a party to the case or an officer, director, or trustee of a party.

(5)  A lawyer or the spouse of a lawyer in the case is the spouse, former spouse, child, sibling, or parent of the arbitrator or the arbitrator's spouse or if such a person is associated in the practice of law with a lawyer in the case.

(6)  If, for any reason:

- The arbitrator believes his or her disqualification would further the interest of justice.
- The arbitrator believes there is a substantial doubt as to her or his capacity to be impartial.
- A person aware of the facts might reasonably entertain a doubt that the arbitrator would be able to be impartial.

(7)  The arbitrator is biased or prejudiced toward a lawyer in the case.

(b)  The arbitrator shall notify the ADR Administrator within ten (10) days of the Notice of Assignment of any grounds for disqualification known to him or her and another arbitrator will be selected.

(c)  In addition to any other disclosure required by law, no later than five days before the deadline for parties to file a motion for disqualification of the arbitrator under Code of Civil  Procedure section 170.6 or, if the arbitrator is not aware of his or her appointment or of a matter subject disclosure at that time, as soon as practicable thereafter, and arbitrator must disclose to the parties any significant personal or professional relationship the arbitrator has or has had with a party, attorney, or law firm in the instant case, including the number and nature of any proceedings in the past 24 months in which the arbitrator has been privately compensated by a party, attorney, law firm, or insurance company in the instant case for any services, including services as an attorney, expert witness, or consultant or as a judge, referee, arbitrator, mediator, neutral evaluator, settlement facilitator, or other alternative dispute resolution neutral.

(d)  A copy of any request by a party for the disqualification of an arbitrator under Code of Civil Procedure section 170.1 or 170.6 must be sent to the ADR administrator.

(e)  On motion of an party, made as promptly as possible under Code of Civil Procedure sections 170.1 and 1141.18(d) and before the conclusion of arbitration proceedings, the appointment of an arbitrator to a case must be vacated if the court finds that:

(1)  The party has demanded that the arbitrator disqualify herself or himself;

(2)  The arbitrator has failed to do so; and

(3)  Any of the grounds specified in section 170.1 exists.

The ADR Administrator must return the case to the top of the arbitration hearing list and appoint a new arbitrator.

**5. Notice and Setting of Arbitration Hearing.**

Within fifteen (15) days of receiving the Selection of ADR Neutral and Party List, the arbitrator must set the time, date, and place of the arbitration hearing and provide each party and the ADR Administrator with a Notice of ADR Session at least 30 days prior to the hearing date.  The arbitration hearing must be scheduled not sooner than 35 days and not later than 90 days from the date of referral to arbitration.

The hearing must be set at a convenient date, time and place within the County of Orange,  The hearing may not be set on a Saturday, Sunday, or legal holiday without the written stipulation of all parties and the arbitrator.  Upon the written stipulation of all parties and the arbitrator, the arbitration hearing may be held at a location outside of Orange County.

If the arbitrator is unable to hold the hearing within the time limitations, a notification shall be submitted to the ADR Administrator and all parties.  The ADR Administrator will return the case to the list of cases pending appointment of a new arbitrator pursuant to these guidelines.

**6.  Continuances.**

An arbitration hearing may not be continued beyond the ninety (90) day period except by order of the court for good cause.

An arbitration hearing date may be continued:

- By written stipulation of all counsel with the consent of the arbitrator.  The original copy of the stipulation shall be filed with the ADR Administrator.  The new hearing date must be set within 90 days of the referral to arbitration.

- By noticed motion, if the desired hearing date is more than 90 days from the referral to arbitration. A written declaration must be submitted with the motion, stating the reason(s) for the extended setting.  The motion must be set for hearing before the judge who signed the arbitration referral order.

- By written stipulation of all parties, and approval of the court, if the hearing date exceeds 90 days from the referral to arbitration.  A written declaration must be submitted with the stipulation, stating the reason(s) for the extended setting.  The stipulation must be filed with the ADR Administrator.  The stipulation must be titled "Stipulation and Order for Continuance of Arbitration" and shall include, below the attorney signatures, the language "IT IS SO ORDERED," followed by a date and signature line for the judge.

**7.  Ex Parte Communication.**

An arbitrator must not initiate, permit, or consider any ex parte communications or consider other communications made to the arbitrator outside the presence of all parties concerning a pending arbitration, except as follows:

(a)  An arbitrator may communicate with a party in the absence of other parties about administrative matters, such as setting the time and place of hearings or making other arrangements for the conduct of the proceedings, as long as the arbitrator reasonably believes that the communication will not result in a procedural or tactical advantage for any party.  When such a discussion occurs, the arbitrator must promptly inform the other parties of the communication and must give the other parties an opportunity to respond before making any final determination concerning the matter discussed.

(b)  An arbitrator may initiate or consider any ex parte communication when expressly authorized by law to do so.

No disclosure of any offers of settlement made by any party may be made to the arbitrator prior to the filing of the award.

## 8.  Discovery.

The parties to the arbitration shall have the right to take depositions and to obtain discovery, and to that end may exercise all of the same rights, remedies and procedures, and shall be subject to all of the same duties, liabilities, and obligations as provided by applicable laws and regulations for other cases pending in the Orange County Superior Court[2], except that all arbitration discovery must be completed no later than 15 days prior to the date set for the arbitration hearing unless the court, upon a showing of good cause, makes an order granting an extension of the time within which discovery must be completed.

## 9.  Representation by Counsel.

A party to the arbitration has a right to be represented by an attorney at any proceeding or hearing in arbitration, but this right may be waived.  A waiver of this right may be revoked, but if revoked, the other party is entitled to a reasonable continuance for the purpose of obtaining counsel.

## 10.  Absence of a Party.

The arbitration may proceed in the absence of any party who, after due notice, fails to be present and to obtain a continuance.  An award must not be based solely on the absence of a party.  In the event of a default by the defendant, the arbitrator must require the plaintiff to submit such evidence as may be appropriate for the making of an award.

## 12.  Rules of Evidence at Hearing.

(a)  All evidence must be taken in the presence of the arbitrator and all parties, except where any of the parties has waived the right to be present or is absent after due notice of the hearing.

(b)  The rules of evidence governing civil cases apply to the conduct of the arbitration hearing, except:

(1)  Any party may offer written reports of any expert witness, medical records and bills (including physiotherapy, nursing, and prescription bills), documentary evidence of loss of income, property damage repair bills or estimates, police reports concerning an accident that gave rise to the case, other bills and invoices, purchase orders, checks, written contracts, and similar documents prepared and maintained in the ordinary course of business.

- The arbitrator must receive them in evidence if copies have been delivered to all opposing parties at least 20 days before the hearing.

- Any other party may subpoena the author or custodian of the document as a witness and examine the witness as if under cross-examination.

- Any repair estimate offered as an exhibit, and the copies delivered to opposing parties, must be accompanied by:

---

[2] For unlimited civil cases, Part 4, Title 3, Chapter 3 of the Code of Civil Procedure.  For limited civil cases, Part 1, Title 1, Chapter 5 of the Code of Civil Procedure.

- o   A statement indicating whether or not the property was repaired, and, if it was, whether the estimated repairs were made in full or in part; and

- o   A copy of the receipted bill showing the items of repair and the amount paid.

- The arbitrator must not consider any opinion as to ultimate fault expressed in a police report.

(2)  The written statements of any other witness may be offered and must be received in evidence if:

- They are made by declaration under penalty of perjury;

- Copies have been delivered to all opposing parties at least 20 days before the hearing; and

- No opposing party has, at least 10 days before the hearing, delivered to the proponent of the evidence a written demand that the witness be produced in person to testify at the hearing.  The arbitrator must disregard any portion of a statement received under this rule that would be inadmissible if the witness were testifying in person, but the inclusion of inadmissible matter does not render the entire statement inadmissible.

(3)  The deposition of any witness may be offered by any party and must be received in evidence, subject to objections available by law, notwithstanding that the deponent is not "unavailable as a witness" within the meaning of Evidence Code section 240 and not exceptional circumstances exist, if:

- The deposition was taken in the manner provided for by law or by stipulation of the parties and within the time provided for in these guidelines; and

- Not less than 20 days before the hearing the proponent of the deposition delivered to all opposing parties notice of intention to offer the deposition in evidence.

The opposing party, upon receiving he notice, may subpoena the deponent and, at the discretion of the arbitrator, either the deposition may be excluded from evidence or the deposition may be admitted and the deponent may be further cross-examined by the subpoenaing party.

(c)  The attendance of witnesses at arbitration hearings may be compelled through the issuance of subpoenas.  It is the duty of the party requesting the subpoena to modify the form of the subpoena so as to show that the appearance is before an arbitrator and to give the time and place set for the arbitration hearing.

At the discretion of the arbitrator, nonappearance of a properly subpoenaed witness may be a ground for an adjournment or continuance of the hearing.

If any witness properly served with a subpoena fails to appear at the arbitration hearing or, having appeared, refuses to be sworn or to answer, proceedings to compel compliance with the subpoena on penalty of contempt may be had before the superior court as provided in the Code of Civil Procedure section 1991.

(d)  The delivery of a document or notice may be accomplished manually or by mail in the manner provide in Code of Civil Procedure section 1013.  If service is by mail, the times prescribed for delivery of documents, notices and demands are increased by five days.

**13. Conduct of the Hearing.**

(a) The arbitrator has the following powers:

(1) To administer oaths or affirmations to witnesses;

(2) To make adjournments upon the request of a party or upon his or her own initiative when deemed necessary;

(3) To permit testimony to be offered by deposition;

(4) To permit evidence to be offered and introduced as provided in these guidelines;

(5) To rule upon the admissibility and relevancy of evidence offered;

(6) To invite the parties, on reasonable notice, to submit arbitration briefs;

(7) To decide the law and facts of the case and make an award accordingly;

(8) To award costs, not to exceed the statutory costs of the suit; and

(9) To examine any site or object relevant to the case.

(b) The arbitrator may, but is not required to, make a record of the proceedings.

Any records of the proceedings made by or at the direction of the arbitrator are deemed the arbitrator's personal notes and are not subject to discovery, and the arbitrator must not deliver them to any party to the case or to any other person, except to an employee using the records under the arbitrator's supervision or pursuant to a subpoena issued in a criminal investigation or prosecution for perjury.

No other record may be made, and the arbitrator must not permit the presence of a stenographer or court reporter or the use of any recording device at the hearing, except as expressly permitted by this paragraph.

**14. The Award.**

(a) The award must be in writing and signed by the arbitrator.  It must determine all issues properly raised by the pleadings, including a determination of any damages and an award for costs if appropriate.  The arbitrator is not required to make findings of fact or conclusions of law.

(b) Within 10 days after the conclusion of the arbitration hearing, the arbitrator must file the award with the clerk, with proof of service on each party to the arbitration.  On the arbitrator's application in cases of unusual length or complexity, the court may allow up to 20 additional days for the filing and service of the award.  Within the time for filing the award, the arbitrator may file and serve an amended award.

**15. Arbitrator's Fees.**

(a) Upon the filing of a timely award, the arbitrator will receive the sum of $150.00 for each case as a fee for services rendered on the case.  When two or more cases arise out of the same transaction and are heard at the same hearing, they shall be considered as one case for purposes of determining the arbitrator's fees.

(b)  The arbitrator's fee statement must be submitted to the ADR Unit promptly upon the completion of the arbitrator's duties and must set forth the title and number of the cause arbitrated, the date of the arbitration hearing(s), and the date the award or settlement was filed.

(c)  When the arbitrator has devoted a substantial amount of time to a case that was settled without a hearing, the arbitrator may request fees for her or his services by filing a Notice of Settlement signed by the parties or their counsel.  If the arbitrator has not had a notice signed by counsel, he or she may submit a verified ex parte application for arbitrator's fees concurrently with the fee statement.

(d)  On the arbitrator's verified ex parte application presented concurrently with the fee statement, the court may, for good cause, set a greater fee than that provided by these guidelines, if the arbitration proceeding was of unusual duration or difficulty.

(e)  The arbitrator may request the payment of arbitrator's fees by a verified ex parte application when the award was not timely filed.

16.  **Trial de Novo.**

(a)  Within 30 days after the arbitration award is filed, any party may request a trial de novo by filing a request for trial, with proof of service of a copy upon all other parties in the case.  A request for trial filed after the parties have been served with a copy of the award by the arbitrator, but before the award has been filed, is valid and timely filed.  The 30-day period within which to request trial may not be extended.

(b)  Upon the timely filing of a request for trial de novo after arbitration the case shall be returned to the judge who signed the original arbitration referral order.  The case must proceed as provided under an applicable case management order.  If no pending order provides for the prosecution of the case after a request for trial de novo after arbitration, the court must promptly schedule a case management conference.

(c)  The case shall be tried as though no arbitration proceedings had occurred.  No reference may be made during the trial to the arbitration award, to the fact that there had been arbitration proceedings, to the evidence adduced at the arbitration hearing, or to any other aspect of the arbitration proceedings, and none of the foregoing may be used as affirmative evidence, or by way of impeachment, or for any other purpose at the trial.

(d)  No discovery shall be permissible after an arbitration award in cases where a trial de novo has been granted, except by stipulation or by leave of court upon a showing of good cause.

(e)  If a party has requested a trial de novo after arbitration, the request may not be withdrawn except by a written instrument, signed by counsel for all parties appearing in the case, expressly agreeing that a nonappealable judgment may be entered on the arbitration award.

17.  **Costs of Trial.**

(a)  If the judgment upon the trial de novo is not more favorable in either the amount of damages awarded or the type of relief granted for the party electing the trial de novo than the arbitration award, the court shall order that party to pay the following nonrefundable costs and fees, unless the court finds in writing and upon motion that the imposition of these fees would create such a substantial economic hardship as not to be in the interests of justice:

(1)  To the court, the compensation actually paid to the arbitrator, less any amount paid pursuant to subparagraph (4).

(2)  To the other party or parties, all cost specified in Code of Civil Procedure section 1033.5, and the party electing the trial de novo shall not recover his or her costs.

(3)  To the other party; or parties, the reasonable costs of the services of expert witnesses, who are not regular employees of any party, actually incurred or reasonably necessary in the preparation of the trial of the case.

(4)  To the other party or parties, the compensation paid by the other party or parties to the arbitrator pursuant to Code of Civil Procedure section 1141.28(b).

(b) Those costs and fees, other than the compensation of the arbitrator, shall include only those incurred from the time of election of the trial de novo.

(c)  If the party electing the trial de novo has proceeded in the action in forma pauperis and has failed to obtain a more favorable judgment:

(1) The costs imposed under subparagraphs (a)(2) and (a)(3) shall be imposed only as an offset against any damages awarded in favor of that party.

(2)  The costs under subparagraph (a)(1) shall be imposed only to the extent that there remains a sufficient amount in the judgment after the amount offset under subparagraph (c)(1) has been deducted from the judgment.

(d)  Nothing in these guidelines shall prohibit an arbitration award in excess of $50,000.  However, no party electing a trial de novo after such award shall be subject to the provisions of this section regarding costs.

## 19.  Entry of Award.

(a)  The clerk must enter the award as a judgment immediately upon the expiration of 30 days after the award is filed if not party has, during that period, served and filed a request for trial as provided in these guidelines.

(b)  Promptly upon entry of the award as a judgment, the clerk must mail notice of entry of judgment to all parties who have appeared in the case and must execute a certificate of mailing and place it in the court's file in the case.

(c)  The judgment so entered has the same force and effect in all respects as, and is subject to all provisions of law relating to, a judgment in a civil case or proceeding, except that it is not subject to appeal and it may not be attacked or set aside except as provided in section 20 below.  The judgment so entered may be enforced as if it had been rendered by the court in which it is entered.

## 20.  Vacating Judgment on Award.

(a)  A party against whom a judgment is entered under an arbitration may, within six months after its entry, move to vacate the judgment on the ground that the arbitrator was subject to a disqualification not disclosed before the hearing and or which the arbitrator was then aware, or upon one of the grounds set forth in Code of Civil Procedure sections 473 or 1286.2(a)(1), (2), and (3), and on no other grounds[3].

---

[3] § 473 relates to relief from judgment taken by mistake, inadvertence, surprise or excusable neglect and vacating a default judgment.  § 1286(a) in relevant part requires the vacation of the award if the court finds that:  (1) the award was procured by corruption of other undue means; (2) there was corruption in any of the arbitrators; or (3) the rights of the party were substantially prejudiced by the misconduct of a neutral arbitrator.

(b)  The motion must be heard upon notice to the adverse parties and to the arbitrator, and may be granted only upon clear and convincing evidence that the grounds alleged are true, and that the motion was made as soon as practicable after the moving party learned of the existence of those grounds.

**21.  Settlement of Case.**

If the case is settled, each plaintiff or other party seeking affirmative relief must notify the arbitrator and the court as required by section 3 of these guidelines.

**22.  Arbitration not Pursuant to Rules and Guidelines.**

These guidelines do not prohibit the parties to any civil case or proceeding from entering into arbitration agreements under part 3, title 9 of the Code of Civil Procedure.  Neither the ADR Committee nor the ADR Administrator may take any part in the conduct of an arbitration under an agreement not in conformity with these rules except that the administrator may, upon joint request of the parties, furnish the parties to the agreement with a randomly selected list of at least three names of members of the appropriate panel of arbitrators.

**23.  Administration of Judicial Arbitration Program.**

(a)  The Alternative Dispute Resolution (ADR) committee is responsible for:

(1)  Appointing the panels of arbitrators provided for in section 24;

(2)  Removing a person from a panel of arbitrators;

(3)  Establishing procedures for selecting an arbitrator; and

(4)  Reviewing the administration and operation of the arbitration program periodically and making recommendations to the Judicial Council as the committee deems appropriate to improve the program, promote the ends of justice, and serve the needs of the community.

(b)  The Chief Executive Officer shall serve as the ADR Administrator, supervise the selection of arbitrators for the cases on the arbitration hearing list, and generally supervise the operation of the arbitration program, and may employ such staff as are necessary to fulfill this responsibility.

**24.  Panels of Arbitrators.**

(a)  The court will have a panel of arbitrators for personal injury cases, and such additional panels as the presiding judge, may, from time to time, determine are needed.

(b)  The panels of arbitrators must be composed of active or inactive members of the State Bar, retired court commissioners who were licensed to practice law before their appointment as commissioners, and retired judges.  A former California judicial officer is not eligible for the panel of arbitrators unless she or he is an active or inactive member of the State Bar.

(c)  The ADR committee is responsible for determining the size and composition of each panel of arbitrators.  The personal injury panel, to the extent feasible, must contain an equal number of those who usually represent plaintiffs and those who usually represent defendants.

(d)  Each person appointed to an arbitration panel serves as a member of the panel at the pleasure of the ADR committee.  A person may be on arbitration panels in more than one county.  An appointment to a panel is effective when the person appointed:

(1)  Agrees to serve;

(2)  Certifies that he or she is aware of and will comply with applicable provisions of canon 6 of the Code of Judicial Ethics and these guidelines;

(3)  Files an oath or affirmation to justly try all matters submitted to her or him; and

(4)  Agrees to serve as an arbitrator on a pro bono or modest-means basis in at least one case per year, not to exceed eight (8) hours, if requested by the Court.

(e)  Lists showing the names of panel arbitrators available to hear cases will be available for public inspection at the Civil Clerk's Office at the Central Justice Center and online.



# 2007 California Rules of Court

## California Code of Judicial Ethics

### *(excerpts applicable to arbitrators)*

### Terminology

Terms explained below are noted with an asterisk (*) in the Canons where they appear. In addition, the Canons in which terms appear are cited after the explanation of each term below.

"Appropriate authority" denotes the authority with responsibility for initiation of the disciplinary process with respect to a violation to be reported. See Commentary to Canon 3D.

"Candidate." A candidate is a person seeking election for or retention of judicial office by election. A person becomes a candidate for judicial office as soon as he or she makes a public announcement of candidacy, declares or files as a candidate with the election authority, or authorizes solicitation or acceptance of contributions or support. The term "candidate" has the same meaning when applied to a judge seeking election to nonjudicial office, unless on leave of absence. See Preamble and Canons 2B(3), the preliminary paragraph of 5, 5A, 5B, 5C, and 6E.

"Court personnel" does not include the lawyers in a proceeding before a judge. See Canons 3B(4), 3B(7)(b), 3B(9), and 3C(2).

"Fiduciary" includes such relationships as executor, administrator, trustee, and guardian. See Canons 4E, 6B, and 6F (*Commentary*).

"Law" denotes court rules as well as statutes, constitutional provisions, and decisional law. See Canons 1 (*Commentary*), 2A, 2C (*Commentary*), 3A, 3B(2), 3B(7), 3E, 4B (*Commentary*), 4C, 4D(6)(a)-(b), 4F, 4H, and 5D.

"Member of the judge's family" denotes a spouse, registered domestic partner, child, grandchild, parent, grandparent, or other relative or person with whom the judge maintains a close familial relationship. See Canons 2B(2), 4D(1) (*Commentary*), 4D(2), 4E, 4G (*Commentary*), and 5A.

"Member of the judge's family residing in the judge's household" denotes a spouse or registered domestic partner and those persons who reside in the judge's household who are relatives of the judge including relatives by marriage, or persons with whom the judge maintains a close familial relationship. See Canons 4D(5) and 4D(6).

"Nonprofit youth organization" is any nonprofit corporation or association, not organized for the private gain of any person, whose purposes are irrevocably dedicated to benefiting and serving the interests of minors and which maintains its nonprofit status in accordance with applicable state and federal tax laws. See Canon 2C.

"Nonpublic information" denotes information that, by law, is not available to the public. Nonpublic information may include but is not limited to information that is sealed by statute or court order,

impounded, or communicated in camera; and information offered in grand jury proceedings, presentencing reports, dependency cases, or psychiatric reports. See Canon 3B(11).

"Political organization" denotes a political party, political action committee, or other group, the principal purpose of which is to further the election or appointment of candidates to nonjudicial office. See Canon 5A.

"Registered domestic partner" denotes a person who has registered for domestic partnership pursuant to state law or who is recognized as a domestic partner pursuant to Family Code section 299.2.

"Temporary Judge." A temporary judge is an active or inactive member of the bar who, pursuant to article VI, section 21 of the California Constitution, serves or expects to serve as a judge once, sporadically, or regularly on a part-time basis under a separate court appointment for each period of service or for each case heard. See Canons 4C(3)(d)(i), 6A, and 6D.

"Require." Any Canon prescribing that a judge "require" certain conduct of others means that a judge is to exercise reasonable direction and control over the conduct of those persons subject to the judge's direction and control. See Canons 3B(3), 3B(4), 3B(6), 3B(8) (*Commentary*), 3B(9), and 3C(2).

"Subordinate judicial officer." A subordinate judicial officer is, for the purposes of this Code, a person appointed pursuant to article VI, section 22 of the California Constitution, including, but not limited to, a commissioner, referee, and hearing officer. See Canon 6A.

# CANON 1

## A JUDGE SHALL UPHOLD THE INTEGRITY AND INDEPENDENCE OF THE JUDICIARY

**An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing high standards of conduct, and shall personally observe those standards so that the integrity and independence of the judiciary will be preserved. The provisions of this Code are to be construed and applied to further that objective. A judicial decision or administrative act later determined to be incorrect legally is not itself a violation of this Code.**

*ADVISORY COMMITTEE COMMENTARY*

*Deference to the judgments and rulings of courts depends upon public confidence in the integrity and independence of judges. The integrity and independence of judges depend in turn upon their acting without fear or favor. Although judges should be independent, they must comply with the law\* and the provisions of this Code. Public confidence in the impartiality of the judiciary is maintained by the adherence of each judge to this responsibility. Conversely, violations of this Code diminish public confidence in the judiciary and thereby do injury to the system of government under law.*

*The basic function of an independent and honorable judiciary is to maintain the utmost integrity in decision making, and this Code should be read and interpreted with that function in mind.*

# CANON 2

## A JUDGE SHALL AVOID IMPROPRIETY AND THE APPEARANCE OF IMPROPRIETY IN ALL OF THE JUDGE'S ACTIVITIES

### A. Promoting Public Confidence

A judge shall respect and comply with the law\* and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

*ADVISORY COMMITTEE COMMENTARY*

*Public confidence in the judiciary is eroded by irresponsible or improper conduct by judges. A judge must avoid all impropriety and appearance of impropriety. A judge must expect to be the subject of constant public scrutiny. A judge must therefore accept restrictions on the judge's conduct that might be viewed as burdensome by other members of the community and should do so freely and willingly.*
*The prohibition against behaving with impropriety or the appearance of impropriety applies to both the professional and personal conduct of a judge.*
*The test for the appearance of impropriety is whether a person aware of the facts might reasonably entertain a doubt that the judge would be able to act with integrity, impartiality, and competence. See also Commentary under Canon 2C.*

### B. Use of the Prestige of Judicial Office

(1) A judge shall not allow family, social, political, or other relationships to influence the judge's judicial conduct or judgment, nor shall a judge convey or permit others to convey the impression that any individual is in a special position to influence the judge.

## CANON 3

## A JUDGE SHALL PERFORM THE DUTIES OF JUDICIAL OFFICE IMPARTIALLY AND DILIGENTLY

### B. Adjudicative Responsibilities

(1) A judge shall hear and decide all matters assigned to the judge except those in which he or she is disqualified.

*ADVISORY COMMITTEE COMMENTARY*

*Canon 3B(1) is based upon the affirmative obligation contained in the Code of Civil Procedure.*

(2) A judge shall be faithful to the law* regardless of partisan interests, public clamor, or fear of criticism, and shall maintain professional competence in the law.*

(3) A judge shall require* order and decorum in proceedings before the judge.

(4) A judge shall be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom the judge deals in an official capacity, and shall require* similar conduct of lawyers and of all court staff and personnel* under the judge's direction and control.

(5) A judge shall perform judicial duties without bias or prejudice. A judge shall not, in the performance of judicial duties, engage in speech, gestures, or other conduct that would reasonably be perceived as (1) bias or prejudice, including but not limited to bias or prejudice based upon race, sex, religion, national origin, disability, age, sexual orientation, or socioeconomic status, or (2) sexual harassment.

*(Canon 3B (5) amended effective December 22, 2003.)*

(6) A judge shall require* lawyers in proceedings before the judge to refrain from manifesting, by words or conduct, bias or prejudice based upon race, sex, religion, national origin, disability, age, sexual orientation, or socioeconomic status against parties, witnesses, counsel, or others. This Canon does not preclude legitimate advocacy when race, sex, religion, national origin, disability, age, sexual orientation, socioeconomic status or other similar factors are issues in the proceeding.

(7) A judge shall accord to every person who has a legal interest in a proceeding, or that person's lawyer, full right to be heard according to law.* A judge shall not initiate, permit, or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties concerning a pending or impending proceeding, except as follows:

(a) A judge may obtain the advice of a disinterested expert on the law* applicable to a proceeding before the judge if the judge gives notice to the parties of the person consulted and the substance of the advice, and affords the parties reasonable opportunity to respond.

(b) A judge may consult with court personnel* whose function is to aid the judge in carrying out the judge's adjudicative responsibilities or with other judges.

(c) A judge may, with the consent of the parties, confer separately with the parties and their lawyers in an effort to mediate or settle matters pending before the judge.

(d) A judge may initiate ex parte communications, where circumstances require, for scheduling, administrative purposes, or emergencies that do not deal with substantive matters provided:

(i) the judge reasonably believes that no party will gain a procedural or tactical advantage as a result of the ex parte communication, and

(ii) the judge makes provision promptly to notify all other parties of the substance of the ex parte communication and allows an opportunity to respond.

(e) A judge may initiate or consider any ex parte communication when expressly authorized by law* to do so.

*ADVISORY COMMITTEE COMMENTARY*

*The proscription against communications concerning a proceeding includes communications from lawyers, law professors, and other persons who are not participants in the proceeding, except to the limited extent permitted by the exceptions noted in Canon 3B(7).*

*This Canon does not prohibit a judge from initiating or considering an ex parte communication when authorized to do so by stipulation of the parties.*

*This Canon does not prohibit court staff from communicating scheduling information or carrying out similar administrative functions.*

*An appropriate and often desirable procedure for a court to obtain the advice of a disinterested expert on legal issues is to invite the expert to file an amicus curiae brief.*

*A judge must not independently investigate facts in a case and must consider only the evidence presented, unless otherwise authorized by law.* For example, a judge is statutorily authorized to investigate and consult witnesses informally in small claims cases.*

(8) A judge shall dispose of all judicial matters fairly, promptly, and efficiently.

*ADVISORY COMMITTEE COMMENTARY*

*The obligation of a judge to dispose of matters promptly and efficiently must not take precedence over the judge's obligation to dispose of the matters fairly and with patience. A judge should monitor and supervise cases so as to reduce or eliminate dilatory practices, avoidable delays, and unnecessary costs. A judge should encourage and seek to facilitate settlement, but parties should not feel coerced into surrendering the right to have their controversy resolved by the courts.*

*Prompt disposition of the court's business requires a judge to devote adequate time to judicial duties, to be punctual in attending court and expeditious in determining matters under submission, and to require\* that court officials, litigants, and their lawyers cooperate with the judge to that end.*

(11) A judge shall not disclose or use, for any purpose unrelated to judicial duties, nonpublic information* acquired in a judicial capacity.

*ADVISORY COMMITTEE COMMENTARY*

*This Canon makes it clear that judges cannot make use of information from affidavits, jury results, or court rulings, before they become public information, in order to gain a personal advantage.*

## C. Administrative Responsibilities

(1) A judge shall diligently discharge the judge's administrative responsibilities without bias or prejudice and maintain professional competence in judicial administration, and shall cooperate with other judges and court officials in the administration of court business.

(2) A judge shall require* staff and court personnel* under the judge's direction and control to observe appropriate standards of conduct and to refrain from manifesting bias or prejudice based upon race, sex, religion, national origin, disability, age, sexual orientation, or socioeconomic status in the performance of their official duties.

(4) A judge shall not make unnecessary court appointments. A judge shall exercise the power of appointment impartially and on the basis of merit. A judge shall avoid nepotism and favoritism. A judge shall not approve compensation of appointees above the reasonable value of services rendered.

*ADVISORY COMMITTEE COMMENTARY*

*Appointees of a judge include assigned counsel, officials such as referees, commissioners, special masters, receivers, and guardians, and personnel such as clerks, secretaries, court reporters, court interpreters, and bailiffs. Consent by the parties to an appointment or an award of compensation does not relieve the judge of the obligation prescribed by Canon 3C(4).*

## D. Disciplinary Responsibilities

(1) Whenever a judge has reliable information that another judge has violated any provision of the Code of Judicial Ethics, the judge shall take or initiate appropriate corrective action, which may include reporting the violation to the appropriate authority.*

(2) Whenever a judge has personal knowledge that a lawyer has violated any provision of the Rules of Professional Conduct, the judge shall take appropriate corrective action.

*ADVISORY COMMITTEE COMMENTARY*
*Appropriate corrective action could include direct communication with the judge or lawyer who has committed the violation, other direct action if available, or a report of the violation to the presiding judge, appropriate authority,* or other agency or body. Judges should note that in addition to the action required by Canon 3D(2), California law imposes additional reporting requirements regarding lawyers.*

# CANON 4

# A JUDGE SHALL SO CONDUCT THE JUDGE'S QUASI-JUDICIAL AND EXTRAJUDICIAL ACTIVITIES AS TO MINIMIZE THE RISK OF CONFLICT WITH JUDICIAL OBLIGATIONS

## A. Extrajudicial Activities in General

A judge shall conduct all of the judge's extrajudicial activities so that they do not

(1) cast reasonable doubt on the judge's capacity to act impartially;

(2) demean the judicial office; or

(3) interfere with the proper performance of judicial duties.

*ADVISORY COMMITTEE COMMENTARY*

*Complete separation of a judge from extrajudicial activities is neither possible nor wise; a judge should not become isolated from the community in which the judge lives.*

*Expressions of bias or prejudice by a judge, even outside the judge's judicial activities, may cast reasonable doubt on the judge's capacity to act impartially as a judge. Expressions which may do so include jokes or other remarks demeaning individuals on the basis of a classification such as their race, sex, religion, sexual orientation, or national origin. See Canon 2C and accompanying Commentary.*

## CANON 6

## COMPLIANCE WITH THE CODE OF JUDICIAL ETHICS

### A. Judges

**Anyone who is an officer of the state judicial system and who performs judicial functions,** including, but not limited to, a subordinate judicial officer, magistrate, court-appointed arbitrator, judge of the State Bar Court, temporary judge, and special master, is a judge within the meaning of this Code. All judges shall comply with this Code except as provided below.

*ADVISORY COMMITTEE COMMENTARY*

*For the purposes of this Canon, if a retired judge is serving in the assigned judges program, the judge is considered to "perform judicial functions." Because retired judges who are privately retained may perform judicial functions, their conduct while performing those functions should be guided by this Code.*

*(Canon 6A amended effective January 1, 2005.)*

### C. Retired Judge as Arbitrator or Mediator

A retired judge serving in the assigned judges program is not required to comply with Canon 4F of this Code relating to serving as an arbitrator or mediator, or performing judicial functions in a private capacity, except as otherwise provided in the *Standards and Guidelines for Judges Serving on Assignment* promulgated by the Chief Justice.

*ADVISORY COMMITTEE COMMENTARY*

*In California, article VI, section 6 of the California Constitution provides that a "retired judge who consents may be assigned to any court" by the Chief Justice. Retired judges who are serving in the assigned judges program pursuant to the above provision
are bound by Canon 6B, including the requirement of Canon 4G barring the practice of law. Other provisions of California law, and standards and guidelines for eligibility and service set by the Chief Justice, further define the limitations on who may serve on assignment.*

### D. Temporary Judge*, Referee, or Court-appointed Arbitrator

A temporary judge, a person serving as a referee pursuant to Code of Civil Procedure section 638 or 639, or a court-appointed arbitrator shall comply only with the following Code provisions:

(1) A temporary judge, referee, or court-appointed arbitrator shall comply with Canons 1 [integrity and independence of the judiciary], 2A [promoting public confidence], 3B(3) [order and decorum] and (4) [patient, dignified, and courteous treatment], 3B(6) [require lawyers to refrain from manifestations of any form of bias or prejudice], 3D(1) [action regarding misconduct by another judge] and (2) [action regarding

misconduct by a lawyer], when the temporary judge, referee, or court-appointed arbitrator is actually presiding in a proceeding or communicating with the parties, counsel, or court personnel while serving in the capacity of a temporary judge, referee, or court-appointed arbitrator in the case.

(2) A temporary judge, referee, or court-appointed arbitrator shall, from the time of notice and acceptance of appointment until termination of the appointment:

(a) Comply with Canons 2B(1) [not allow family or other relationships to influence judicial conduct], 3B(1) [hear and decide all matters unless disqualified] and (2) [be faithful to and maintain competence in the law], 3B(5) [perform judicial duties without bias or prejudice], 3B(7) [accord full right to be heard to those entitled; avoid ex parte communications, except as specified] and (8) [dispose of matters fairly and promptly], 3C(1)[discharge administrative responsibilities without bias and with competence and cooperatively], (2) [require staff and personnel to observe standards of conduct and refrain from bias and prejudice] and (4) [make only fair, necessary, and appropriate appointments];

(b) Not lend the prestige of judicial office to advance his, her, or another person's pecuniary or personal interests and not use his or her judicial title in any written communication intended to advance his, her, or another person's pecuniary or personal interests, except to show his, her, or another person's qualifications;

(c) Not personally solicit memberships or donations for religious, fraternal, educational, civic, or charitable organizations from the parties and lawyers appearing before the temporary judge, referee, or court-appointed arbitrator;

(d) Under no circumstance accept a gift, bequest, or favor if the donor is a party, person, or entity whose interests are reasonably likely to come before the temporary judge, referee, or court-appointed arbitrator. A temporary judge, referee, or court-appointed arbitrator shall discourage members of the judge's family residing in the judge's household from accepting benefits from parties who are reasonably likely to come before the temporary judge, referee, or court-appointed arbitrator.

(5) A temporary judge, referee, or court-appointed arbitrator shall, from the time of notice and acceptance of appointment until termination of the appointment:

(a) In all proceedings, disclose in writing or on the record information as required by law, or information that the parties or their lawyers might reasonably consider relevant to the question of disqualification under Canon 6D(3), including personal or professional relationships known to the temporary judge, referee, or court-appointed arbitrator that he or she or his or her law firm has had with a party, lawyer, or law firm in the current proceeding, even though the temporary judge concludes that there is no actual basis for disqualification; and

(b) In all proceedings, disclose in writing or on the record membership of the temporary judge, referee, or court-appointed arbitrator, in any organization that practices invidious discrimination on the basis of race, sex, religion, national origin, or sexual orientation, except for membership in a religious or an official military organization of the United States and membership in a nonprofit youth organization so long as membership does not violate Canon 4A [conduct of extrajudicial activities].

(6) A temporary judge, referee, or court-appointed arbitrator, from the time of notice and acceptance of appointment until the case is no longer pending in any court, shall not make any public comment about a pending or impending proceeding in which the temporary judge, referee, or court-appointed arbitrator has been engaged, and shall not make any nonpublic comment that might substantially interfere with such proceeding. The temporary judge, referee, or court-appointed arbitrator shall require similar abstention on the part of court personnel subject to his or her control. This Canon does not prohibit the following:

(a) Statements made in the course of the official duties of the temporary judge, referee, or court-appointed arbitrator; and

(b) Explanations for public information about the procedures of the court.

(7) From the time of appointment and continuing for two years after the case is no longer pending in any court, a temporary judge, referee, or court-appointed arbitrator shall under no circumstances accept a gift, bequest, or favor from a party, person, or entity whose interests have come before the temporary judge, referee, or court-appointed arbitrator in the matter. The temporary judge, referee, or court-appointed arbitrator shall discourage family members residing in the household of the temporary judge, referee, or court-appointed arbitrator from accepting any benefits from such parties, persons or entities during the time period stated in this subdivision. The demand for or receipt by a temporary judge, referee, or court-appointed arbitrator of a fee for his or her services rendered or to be rendered shall not be a violation of this Canon.

(8) A temporary judge, referee, or court-appointed arbitrator shall, from time of notice and acceptance of appointment and continuing indefinitely after the termination of the appointment:

(a) Comply with Canons 3(B)(11) [no disclosure of nonpublic information acquired in a judicial capacity] (except as required by law); and

(b) Not commend or criticize jurors sitting in a proceeding before the temporary judge, referee, or court-appointed arbitrator for their verdict other than in a court order or opinion in such proceeding, but may express appreciation to jurors for their service to the judicial system and the community.

(10) A temporary judge, referee, or court-appointed arbitrator shall comply with Canon 6D(2) until the appointment has been terminated formally or until there is no reasonable probability that the temporary judge, referee, or court-appointed arbitrator will further participate in the matter. A rebuttable presumption that the appointment has been formally terminated shall arise if, within one year from the appointment or from the date of the last hearing scheduled in the matter, whichever is later, neither the appointing court nor counsel for any party in the matter has informed the temporary judge, referee, or court-appointed arbitrator that the appointment remains in effect.

(11) A lawyer who has been a temporary judge, referee, or court-appointed arbitrator in a matter shall not accept any representation relating to the matter without the informed written consent of all parties.

(12) When by reason of serving as a temporary judge, referee, or court-appointed arbitrator in a matter, he or she has received confidential information from a party, the person shall not, without the informed written consent of the party, accept employment in another matter in which the confidential information is material.

*ADVISORY COMMITTEE COMMENTARY*

*Any exceptions to the Canons do not excuse a judicial officer's separate statutory duty to disclose information that may result in the judicial officer's recusal or disqualification.*

*(Canon 6D amended effective January 1, 2007; adopted effective January 15, 1996; previously amended effective April 15, 1996, March 4, 1999 and July 1, 2006.)*

**E. Judicial Candidate**

A candidate* for judicial office shall comply with the provisions of Canon 5.

**F. Time for Compliance**

A person to whom this Code becomes applicable shall comply immediately with all provisions of this Code except Canons 4D(2) and 4F and shall comply with these Canons as soon as reasonably possible and shall do so in any event within a period of one year.

*ADVISORY COMMITTEE COMMENTARY*

*If serving as a fiduciary\* when selected as a judge, a new judge may, notwithstanding the prohibitions in Canon 4F, continue to serve as fiduciary\* but only for that period of time necessary to avoid adverse consequences to the beneficiary of the fiduciary relationship and in no event longer than one year. Similarly, if engaged at the time of judicial selection in a business activity, a new judge may, notwithstanding the prohibitions in Canon 4D(2), continue in that activity for a reasonable period but in no event longer than one year.*

*(Canon 6G repealed effective June 1, 2005; adopted December 30, 2002.)*